

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CPL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 06 C 1352 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| FRAGCHEM, CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is the Complaint in this action. Attached to the Complaint is a Supply Agreement between the parties that includes a provision for arbitration. For the following reasons, the court, *sua sponte*, dismisses the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

## I. INTRODUCTION

### A. Facts

This case arises out of a business relationship between Plaintiff CPL, Inc. ("CPL"), and Defendant Fragchem Corporation ("Fragchem"). CPL is incorporated under the laws of Missouri with its principle place of business in Maryland. Cadila Pharmaceuticals Ltd. ("Cadila") is an Indian corporation, having its main offices in Ahmedabad, India and incorporated under the Indian Corporation Act. CPL is a wholly-owned subsidiary of Satellite Overseas Holdings, Ltd., which itself is a wholly-owned subsidiary of Cadila. Fragchem is incorporated under the laws of

Illinois with its principle place of business within the state.

In 1997, Fragchem and Cadila established an exclusive supply/purchase agreement for chemicals termed C Products. The term "C Products" refers to Chlorhexidine Base, Chlorhexidine Gluconate, Chlorhexidine Diacetate, and Chlorhexidine Dihydrochloride, which are used in the production of certain generic pharmaceutical compounds. Fragchem agreed to give Cadila technical assistance with the manufacture of C Products. In exchange, Cadila agreed to be the exclusive provider of C Products to, and exclusively for, Fragchem. A Memorandum of Understanding was incorporated in a Supply Agreement, and signed by both Fragchem and Cadila on March 18, 1997. The agreement was to run until May 2002, at which point the parties could renew it yearly unless either party terminated it in writing. The Supply Agreement contains two sections relevant to this litigation. Article 8.4 provides that

> **Amendment and Assignment.** This agreement may not be amended, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which enforcement... is sought. *This agreement shall be binding upon the respective parent, subsidiaries, affiliates, successors, and assigns of CPL and Fragchem.* This agreement may not be assigned by any party without the written consent of the other parties. (emphasis added).

Additionally, Article 8.7 of the Supply Agreement provides for arbitration.

> 8.7. Any controversy arising under this Agreement, or any breach thereof, shall be referred to and finally settled by Arbitration in accordance with the provisions of Arbitration and Conciliation Proceedings prevalent in India, and judgment upon this award may be entered in any court having jurisdiction. However, such Arbitration proceedings shall take place at Ahmedabad (Gujarat) in India and the language of such arbitration shall be in English.

This arrangement remained in place until 2000, when Cadila requested that Fragchem begin submitting purchase orders and payments directly to CPL. Despite initial protests,

Fragchem consented to this change, allegedly with assurances from Cadila that the Supply Agreement would be binding on CPL. Then, on November 7, 2001, Cadila's Chairman formally notified Fragchem of its intent to terminate the Supply Agreement. Fragchem's Secretary, Mr. Parikh, acknowledged termination of the agreement on May 6, 2002. However, Mr. Parikh asserts in his affidavit that Cadila and Fragchem subsequently reinstated the Supply Agreement, and that the parties were operating under this Supply Agreement at the time the events of this litigation occurred.

In April 2004, Fragchem placed an oral order with CPL for 4,000 kilograms of C Products for $131,000. CPL shipped the order on April 28, 2004, which Fragchem received in late April or early May. An invoice included with the shipment stated "Terms Net 90 days from date of B/L: 4/28/04 – Due 7/28/04 . . . Payment to be made via wire transfer." The invoice also contained boilerplate terms and conditions of sale at the bottom. On October 9 and October 18, 2004, Mr. B.V. Suresh, a vice-president with Cadila, sent e-mails to Fragchem demanding payment on the delivery. Mr. Indu Modi, Cadila's Chairman, also sent similar letters. CPL alleges that Fragchem never paid for the shipment, despite acknowledging receipt of the shipment.

## B. Procedural History

On March 10, 2006 CPL filed its two-count complaint alleging breach of the Supply Agreement in the United States District Court for the Northern District of Illinois. Upon review of the complaint, the court discovered the Supply Agreement between the parties, which includes an arbitration agreement. The court, *sua sponte*, dismisses this complaint for improper venue.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Procedure 12(b)(3), a case may be dismissed for lack of proper venue. Where parties to a contract have agreed to arbitrate disputes arising from that contract, dismissal pursuant to Rule 12(b)(3) is appropriate. See Metro. Life Ins. Co. v. O'Malley, 392 F. Supp. 2d 1042 (N.D. Ill. 2005); see also Cont'l Ins. Co. v. M/V Orsula, 354 F.3d 603, 606-07 (7th Cir. 2003) ("A lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss."); Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) ("We have held dismissal [where both parties to a contract have agreed to arbitrate disputes] to be appropriate, and, when the question has arisen, we have held that such dismissal properly is requested under Rule 12(b)(3).") (citations omitted).

### B. Plaintiff's Cause of Action

#### *1. Arbitration in the federal courts*

District courts are constantly reminded that there is a "national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 126 S. Ct. 1204, 1207 (2006). Additionally, the court notes that "parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the assignment knowledge of the commercial setting in which the dispute arose." Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (internal citations omitted).

Arbitration is contractual by nature; "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration." James v. McDonald's Corp., 417 F.3d 672,

4

677 (7th Cir. 2005) (citing First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 945 (1995)); see Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997)). Federal courts have long approved of arbitration as a legitimate form of dispute resolution. See Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673 (7th Cir. 1983).

The Supreme Court and the Seventh Circuit have both indicated very clearly that where a contract contains a valid arbitration clause, disputes like the one in this case usually belong in front of an arbitrator, not a district court. "[T]here is a presumption of arbitrability that may only be overcome by 'forceful evidence' of an intent to exclude the claim." Oil, Chemical & Atomic Workers Int'l Union, Local 7-1 v. Amoco Oil Co., 883 F.2d 581, 587 (7th Cir. 1989) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585 (1960)); see also Local 75 v. Schreiber Foods, Inc., 213 F.3d 376, 380-81 (7th Cir. 2000) (quoting Warrior, 363 U.S. at 585). There is therefore a strong presumption in favor of arbitrability in this case.

### 2. *The Supply Agreement's Arbitration Clause*

As a preliminary matter, the court notes that the overarching issue in this case is the proper venue, not jurisdiction, of this action. While the court has jurisdiction over this case, the Northern District of Illinois is an inappropriate venue. See Continental Ins. Co., 354 F.3d at 608 (district court has wide discretion to dismiss a case for improper venue if the decision is in conformity with established legal principles and, in terms of the court's application of those principles to the facts of the case, is within the range of options from which a reasonable trial judge would select); see Sinochem Intern. Ltd. Co. v. Malaysia Intern. Shipping Corp., 127 S.Ct. 1184 (2007) ("A district court declining to adjudicate state-law claims on discretionary grounds need not first determine whether these claims fall within its pendent jurisdiction.").

Here, there is "a contract that provides for arbitration of some issues between [the parties].'" See County of McHenry v. Ins. Co. of the West, 438 F.3d 813, 821 (7th Cir. 2006) (quoting Miller v. Flume, 139 F.3d 1130, 1136 (7th Cir. 1998)). Any questions "'concerning the scope of the arbitration clause are resolved in favor of arbitration.'" Id. The court therefore determines that the arbitration clause applies to the dispute in this case, which stems from the interpretation or application of the Supply Agreement between Fragchem and Cadila, as to the amount Fragchem owes CPL under the Supply Agreement. The proper venue for this dispute is thus arbitration in the country of India, not the Northern District of Illinois, in the United States of America.

This result "makes eminent sense. . . in terms of our precedent." Continental Gas Co., 417 F.3d at 733. At the time the parties signed the Supply Agreement, they opted to "trade the formalities of the judicial process for the expertise and expedition associated with arbitration." See Lefkovitz, 395 F.3d at 780. There are no ambiguities in the Supply Agreement, and the arbitration clause is expressly stated in plain language. See In re Comdisco, Inc., 434 F.3d 963, 967 (7th Cir. 2006). CPL is bound to the Supply Agreement as a result of Article 8.4, which states that "[T]his agreement shall be binding upon the respective parent . . . of CPL and Fragchem." Therefore, because the parties have previously agreed to arbitrate any disputes in India, they should not now be allowed to turn their back on that agreement, in favor of litigation in the federal court. See id.

## III. CONCLUSION

For the foregoing reasons, the court, *sua sponte*, dismisses the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3).

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: 3-19-07

7